UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| COMITÉ DE APOYO A LOS TRABAJADORES AGRÍCOLAS, et al., | CIVIL ACTION |
|---|---|
| Plaintiffs, | No. 09-240 |
| v. | |
| SOLIS, et al., | |
| Defendants. | |

Pollak, J.                                                                 November 24, 2010

## OPINION

As discussed more fully in this court's August 30, 2010 opinion and order (docket nos. 80, 81), the plaintiffs in this case challenged various regulations concerning the H-2B worker program. The relief I granted included an order remanding, without vacatur, certain portions of 20 C.F.R. § 655.10(b)(2) (2010). That regulation dictates the manner in which prevailing wage determinations ("PWDs") for H-2B workers are calculated. I ordered the Department of Labor ("DOL") to promulgate new rules concerning prevailing wage calculations within 120 days—i.e., by no later than December 28, 2010.

On September 10, 2010, plaintiffs filed a Motion to Add Additional Relief under Federal Rule of Civil Procedure 59(e) (docket no. 82).[1] On October 27, 2010, in docket no. 94, I denied

---

[1] The formal designation of Rule 59(e) is "Motion to Alter or Amend a Judgment." A proper Rule 59(e) motion "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice." *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218

1

that motion in part, leaving one aspect of the motion to be addressed later. In the portion of the motion I dealt with, I declined to vacate the wage regulations and I clarified that the 120-day deadline was for publication of new rules, not for the effective date of new rules. In a supplemental response to the Rule 59(e) motion (docket no. 93), the DOL had requested a 30-day extension. I granted this request in part, and extended the deadline by 21 days, to January 18, 2011.

This opinion addresses the final component of plaintiffs' Motion to Add Additional Relief, in which they ask this court to order the DOL to issue conditional certifications to employers seeking to hire H-2B workers. Specifically, plaintiffs ask this court to prohibit DOL from issuing an H-2B labor certification unless and until the employer agrees to pay a prevailing wage set by the new methodology as soon as that methodology becomes effective.[2] Plaintiffs argue that this relief is necessary to prevent a "manifest injustice" because, absent such relief, employers who obtain PWDs prior to the effective date of the new regulations would continue paying wages derived from an invalid wage rate, even after the new regulations take effect.

I.

Under plaintiffs' proposed relief, the DOL would continue to issue PWDs and labor certifications under the invalid methodology, but as soon as the new rules are effective,

---

(3d Cir. 1995). The decision to grant relief under Rule 59(e) is within the discretion of the district court. *Id.*

[2] In their Rule 59(e) reply brief (docket no. 91), plaintiffs further requested that employers agree to pay wages under the new methodology retroactive to December 28, 2010. That request is now moot because it was premised on plaintiffs' reading of the August 30 order as requiring that the new rules be *in effect* on December 28 (the date I have now changed to January 18, 2011, and have designated as the date of publication, not the effective date).

2

previously-certified employers would be required to obtain (and pay) a new PWD. The DOL asserts that this relief would force it to violate its own regulations, and the DOL primarily points to 20 C.F.R. § 655.10(d) (2010), which states in full:

> Validity period. The NPC [National Processing Center] must specify the validity period of the prevailing wage, which in no event may be more than 1 year or less than 3 months from the determination date. For employment that is less than one year in duration, the prevailing wage determination shall apply and shall be paid the prevailing wage [sic] by the employer, at a minimum, for the duration of the employment.

The DOL contends that this provision precludes the DOL from requiring employers to pay a higher wage because it mandates that an employer "shall" pay the PWD "for the duration of employment." The DOL appears to argue that the provision sets both a floor and a ceiling on the wage to be paid "for the duration of employment." But this construction glosses over the phrase "at a minimum," which manifestly sets a floor and not a ceiling.[3] Nothing in § 655.10(d), nor any related regulation,[4] prevents the DOL from devising interim measures to reduce the impact of the deficient methodology. Thus an employer must pay a valid wage for the duration of employment, but it does not follow that an employer must continue paying that wage after it has been deemed to be the product of an invalid regulation.

In sum, nothing in the regulations precludes the DOL from issuing conditional certifications.

---

[3] The DOL does recognize *some* flexibility in the wage to be paid, but it mistakenly assumes that only the employer, and not the DOL, has the authority to raise wages during a period of employment. *See* Def.'s Resp. at 13 (docket no. 89) ("[E]mployers are required to pay the prevailing wage as a minimum, but employers may pay a higher wage in their discretion.")

[4] For example, the fact that an employer must attest that it "will pay the offered wage during the entire period of the approved H-2B labor certification," 20 C.F.R. § 655.22(e) (2010), is another manifestation of the limitations that the regulations place *on the employer*, and it does not, as the DOL asserts, bear on the DOL's ability to require employers to pay wages under a revised PWD.

The DOL contends that its interpretation is entitled to deference because the DOL is interpreting its own regulations. But this court does not owe deference when, as in this case, the agency's interpretation is "'plainly erroneous.'" *See Drake v. FAA*, 291 F.3d 59, 68 (D.C. Cir. 2002) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).[5]

## II.

Although issuance of conditional certifications would not violate existing regulations, the question remains whether, as plaintiffs contend, this court's equitable power is sufficiently broad as to authorize this court to order the DOL to provide such relief. Under the Administrative Procedure Act, "the reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In addition, however, "[a] court sitting in review of an administrative agency is vested with equity powers . . . ." *Ind. & Mich. Electric Co. v. Fed. Power Comm'n*, 502 F.2d 336, 346 (D.C. Cir. 1974). "[W]hile the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial

---

[5] In rejecting the DOL's interpretation of § 655.10(d), I do not adopt plaintiffs' interpretation. Under plaintiffs' view, an employer must obtain a new PWD if the duration of employment extends beyond the initial validity period set by the NPC. Thus plaintiffs seem to argue that once a PWD "expires," the DOL is free to impose a higher PWD. However, in the preamble to the final rule promulgating the current PWD regime, the DOL noted that "the Department has revised § 655.10(d) to clarify that where the duration of a job opportunity is less than one year or less [sic], the prevailing wage determination will be valid for the duration of the job opportunity." Labor Certification Process and Enforcement for Temporary Employment in Occupations Other Than Agriculture or Registered Nursing in the United States (H-2B Workers), 73 Fed. Reg. 78020, 78029 (Dec. 19, 2008). Thus, though inartfully worded, § 655.10(d) dictates that a PWD must be paid, at a minimum, for the duration of employment, even if the initial validity period is less than the duration of employment.

action." *Ford Motor Co. v. NLRB*, 305 U.S. 364, 372 (1939). Thus reviewing courts have imposed time limits on agency action, *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), required an agency to refund excessive fees levied upon regulated entities, *Allied-Signal v. USNC*, 988 F.2d 146, 153 (D.C. Cir. 1993), and ordered an agency to appoint a plaintiff to a permanent position after the agency had arbitrarily delayed his certification, *Hondros v. U.S. Civil Service Comm'n*, 720 F.2d 278, 298 (3d Cir. 1983).

Plaintiffs have cited instances in which a district court has shaped a remand order, but none of the cases is precisely on point. Plaintiffs rely most heavily on two cases, both captioned *NAACP v. Donovan*, in which the district court ordered the DOL to grant a certain type of conditional H-2 labor certification. At the time of the *NAACP* suits, all H-2 workers[6] had to be paid at or above the adverse effect rate ("AER"). *NAACP v. Donovan*, 558 F. Supp. 218, 220 (D.D.C. 1982); *see generally NAACP v. Donovan*, 737 F.2d 67, 68–69 (D.C. Cir. 1984). The AER is calculated each year by the DOL on a state-by-state basis. In mid-1982, the DOL had failed to issue AERs for that year, and the DOL was ordered to establish an AER before the end of the year. *NAACP*, 558 F. Supp. at 221 n.6. To address the delayed issuance of the wage rate, the district court enjoined the DOL from issuing labor certifications unless and until the grower agreed to pay its workers at the 1982 AER once it was established. *Id.* at 226. In the meantime, employers were to pay workers at the 1981 AER. *Id.* at 255. In a subsequent case, the agency was again ordered to issue the same type of conditional certifications after failing to timely issue

---

[6] The *NAACP* litigation predates the 1986 split of the H-2 program into the current H-2A (agricultural) and H-2B (non-agricultural) regime. *See* Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, Sec. 301(a) (1986).

an AER in 1983. *NAACP v. Donovan*, 566 F. Supp. 1202, 1210 (D.D.C. 1983).

Plaintiffs argue that the *NAACP* relief described above is "indistinguishable" from the relief they request here. But this claim ignores the distinctions between the AER—which applied to all H-2 visas at the time of the *NAACP* litigation—and the H-2B prevailing wage rate regime. AERs are issued on a state-by-state basis, whereas H-2B prevailing wages are issued on an employer-by-employer basis. *See* 20 C.F.R. § 655.10(a) (2010). H-2B employers must submit an extensive application for a PWD,[7] and the NPC must provide an individualized wage calculation within 30 days of the request. *Id.* § 655(b)(6). Under plaintiffs' proposed relief, every H-2B employer who received a conditional labor certification would have to obtain a new PWD after the DOL issued revised wage regulations. Conditional certification in this context would thus involve considerably more extensive administration and management than, as in the *NAACP* litigation, simply ordering employers to pay a new statewide wage. I therefore find that plaintiffs' requested relief would stretch this court's equitable authority considerably further than the remedial orders in the *NAACP* litigation.[8]

---

[7] *See* U.S. Dep't of Labor, Application for Prevailing Wage Determination, *available at* http://www.foreignlaborcert.doleta.gov/pdf/ETA_Form_9141.pdf (last visited Nov. 23, 2010).

[8] Plaintiffs also rely on two unpublished H-2 cases in which district judges directed agricultural employers to place funds in escrow. In *Tri-County Growers v. Brock*, 85-0038-M (N.D. W. Va. August 28, 1985), and *Virginia Agric. Growers Ass'n v. Donovan ("VAGA")*, 83-0146-D (W.D. Va. April 26, 1985), employers challenged an H-2 piece-rate wage regulation. The judges issued preliminary injunctions against the DOL, precluding it from enforcing the challenged wage regulations. But the courts also ordered the employers to place funds in escrow to ensure that the workers would be refunded should the new regulations be upheld.
    *Tri-County Growers* and *VAGA* are inapposite. First, as in *NAACP*, the challenged wage calculations were issued on a state-by-state, rather than employer-by-employer, basis. Second, the conditional certifications did not, as plaintiffs request here, require employers to agree to pay a wage based on a regulation that had yet to be promulgated. Instead, the

Moreover, a conditional certification order would blur the line between this court's remedial authority and the DOL's administrative authority. *See, e.g.*, *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 21 (1952) (the power "'to affirm, modify, or set aside' the order of the Commission 'in whole or in part'. . . . is not power to exercise an essentially administrative function" (quoting APA § 706)). The DOL is surely better positioned than this court to devise a set of procedures for ensuring that the new regulation takes operative effect as soon as possible. If the DOL chooses to impose a conditional certification regime,[9] the agency has the expertise to determine how, when, and in what form that regime should be implemented. *See* Merrick Garland, *Deregulation and Judicial Review*, 98 HARV. L. REV. 507, 564 (1995) ("[B]ecause the essence of the executive function is the exercise of discretion, a court transgresses the separation of powers when it dictates that an agency take one particular action instead of others within its discretionary prerogative."). Accordingly, the final component of plaintiffs' Motion to Add Additional Relief, which asks this court to order the DOL to issue conditional labor certifications, is denied.

### III.

In summary, the DOL has failed to identify any facet of its regulations that would

---

employers had to agree to pay wages based on a regulation that had already been issued, but that had been suspended pending a legal challenge. Conditional certifications were accordingly a natural incident to the preliminary injunction, and such circumstances are not present in this case.

[9] In its brief, the DOL stated that, "as a matter of policy," H-2B employers should be required to pay wages under the new regulations as soon as they are effective, and that such a requirement would be "consistent with DOL's mandate." Def.'s Resp. at 9 (docket no. 89) ("DOL would prefer to apply the new prevailing wage methodology to as many workers as possible."). Thus the only apparent impediment to the DOL implementing the proposed relief is the DOL's misconception that the regulations preclude it from doing so.

preclude it from issuing conditional labor certifications. Though it would be sensible for the DOL to adopt measures to minimize the adverse effects of the invalid methodology, I conclude that it is not within my equitable power to instruct the DOL to do so. An appropriate order accompanies this opinion.