UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMITÉ DE APOYO A LOS TRABAJADORES AGRÍCOLAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HILDA SOLIS, et al., <br><br> Defendants. | CIVIL ACTION <br><br> No. 09-240 |

Pollak, J.                                                                                                      June 15, 2011

**MEMORANDUM**

The plaintiffs in this case have challenged the Department of Labor's decision to delay, by almost one year, the effective date of a set of regulations that govern the wages of H-2B workers. For the reasons discussed below, the court finds that the DOL violated the Administrative Procedure Act by imposing the delay without engaging in notice and comment. The court also finds that the DOL acted in contravention of the Immigration and Nationality Act because it justified the delay by pointing to potential hardship to employers—a consideration that is outside the scope of the DOL's congressional mandate.

**I. Background**

This case involves a challenge to various regulations governing the DOL's H-2B visa program.[1] On August 30, 2010, this court invalidated, *inter alia*, two provisions governing the

---

[1] For a more thorough background of this litigation, please see this court's opinion of August 30, 2010. Dkt. 80.

1

calculation of wages that employers must pay to foreign H-2B workers.  Dkts. 80, 81.  These wage provisions, contained in 20 C.F.R. § 655.10(b)(2), were remanded to the DOL without vacatur and with instructions to promulgate new rules by December 28, 2010.

Concerned that the DOL would not promulgate new rules that were *effective* on December 28, 2010, plaintiffs filed a Rule 59 motion asking this court to mandate that the new rules be effective, not simply published, by December 28.  On October 27, in ruling on that motion, this court clarified that its August 30 order only required DOL to *publish* new rules by December 28.  Dkt. 94.  The court also granted the DOL a 21-day extension, such that it was required to publish new rules by January 18, 2011.

In compliance with this court's orders, the DOL issued revised prevailing wage regulations on January 18, 2011.  *See* Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, 76 Fed. Reg. 3452 (Jan. 19, 2011) ("the Wage Rule").  However, in order to "provide employers with sufficient time to plan for their labor needs," the new rule "applies only to wages paid for work performed on or after January 1, 2012." *Id.* at 3462.  Moreover, in the text of the Wage Rule, the DOL requested comments on the issue of whether the Wage Rule should be "phased in" to reduce its disruptive impact.  Specifically, the DOL sought comment on (1) whether a phase-in is desirable, (2) what impact a phase-in would have on workers and employers, and (3) what period and at what levels a phase-in should be implemented.  *Id.*  Though the DOL requested these comments, it emphasized that the new rule is "a final rule, without a phase-in period." *Id.*

Shortly after publication of the Wage Rule, the plaintiffs filed a Motion for an Order

Enforcing the Judgment, which is currently before the court.[2]  Dkt. 103.  In this motion, plaintiffs assert that the Wage Rule is defective because it violates this court's prior orders, the Administrative Procedure Act (APA), and/or the Immigration and Nationality Act (INA).  Specifically, plaintiffs argue that the DOL has violated this court's orders because 1) the Wage Rule is not a final rule, and 2) even if it is a final rule, the delayed effective date contravenes the intent behind the court's prior orders.  As to the APA and INA violations, plaintiffs contend that 1) the delayed implementation of the Rule should have been subject to notice and comment, and 2) the delayed implementation of the Rule is an impermissible effort to alleviate employer hardship.[3]

For the reasons that follow, the court agrees that the January 1, 2012 effective date should be vacated.

## II. Discussion

1) Does the Wage Rule violate this court's prior orders?

**A. Soliciting comments regarding a phase-in of the Wage Rule**

The plaintiffs argue that the DOL has failed to promulgate a final rule because the effective date of the wage rule was "indefinitely delayed . . . until sometime on or after January 1, 2012."  Pl.'s Mem. in Supp. at 1 (dkt. 103-1).  Specifically, plaintiffs protest that the Wage Rule included a solicitation for comments on the desirability of phasing in the Wage Rule.  *See*

---

[2] On April 18, 2011, the plaintiffs filed a Request for Expedited Consideration of the motion currently pending before the court.  Dkt. 113.  The DOL opposed this request on May 5, 2011.  Dkt. 116.

[3] The plaintiffs' motion also asks that the court set a date certain for publication of new regulations addressing the other rules that the court invalidated in its August 30 order.  Those requests will be addressed in a separate memorandum and order.

76 Fed. Reg. at 3462. Plaintiffs seize on this facet of the Wage Rule to argue that there is no final effective date for the rule and thus that the rule cannot be deemed "final." Plaintiffs therefore contend that the failure to issue a final rule was a violation of this court's orders requiring the DOL to publish a final rule by January 18.

As the DOL points out, plaintiffs' argument ignores the explicit language of the Wage Rule, which states: "The final Rule will be effective in its entirety on January 1, 2012" and "This is a final rule, without a phase-in period." 76 Fed. Reg. at 3462. It is therefore apparent that, although the DOL is considering a phase-in period, the current status of the rule is that it will be effective in is entirety on January 1, 2012. In other words, the finality of the rule is not undermined by the fact that the DOL is considering the possibility of a phase-in. Plaintiffs may challenge the validity of a phase-in if and when DOL implements one. At this stage, however, the mere solicitation of comments on a phase-in does not violate this court's prior orders.[4]

**B. Delaying effective date for nearly one year**

Plaintiffs next argue that the one-year delay in the effective date of the Wage Rule violates the "clear intent of the Court's order," which, according to plaintiffs, required that the defective wage methodology "be replaced as promptly as possible." Pl.'s Mem. in Supp. at 5 (dkt. 103-1). Additional background will be helpful in understanding this argument. As discussed above, on August 30, 2010, this court invalidated two facets of the wage calculation

---

[4] Plaintiffs also rely on *NRDC v. EPA*, 683 F.2d 752 (3d Cir. 1982), to support their argument that the DOL has failed to promulgate a final rule. It is true that the *NRDC* court noted that the effective date "is an essential part of any rule . . . [and] without an effective date a rule would be a nullity because it would never require adherence." *Id.* at 762. But as discussed above, the Wage Rule *does* include a valid effective date, and thus *NRDC* is inapplicable with regard to this issue.

regulations. In doing so, the court noted that "the magnitude of DOL's errors counsels in favor of vacating the regulations." Dkt. 80 at 50. However, in order to avoid a regulatory gap, the court remanded without vacatur and instructed the DOL to "promulgate new rules concerning the calculation of the prevailing wage rate in the H-2B program that are in compliance with the Administrative Procedure Act no later than 120 days from the date of this order." Dkt. 81. Thus, instead of vacating the regulations, the court chose to set a deadline to ensure that the new regulations were promulgated promptly.

Plaintiffs then filed a Motion to Add Additional Relief which requested, *inter alia*, that the court clarify that the August 30 order required that the new wage rule be effective, not simply published, by December 28, 2010 (*i.e.*, 120 days from August 30, 2010). Alternatively, plaintiffs asked the court to modify the August 30 order to add a requirement that the new rules be effective December 28, 2010. In ruling on the Motion to Add Additional Relief, the court clarified that the August 30 order "mandates only that the DOL publish new rules concerning the calculation of the prevailing wage rate in the H-2B program by December 28, 2010." Dkt. 94.

Plaintiffs make a strong argument that the DOL has not complied with the clear intent of the court's orders. By noting the serious defects in the existing rules and by ordering promulgation of new rules within 120 days, the August 30 order clearly implied that the new rules should go into effect as rapidly as possible. And although the subsequent order clarified that the rules only needed to be published within 120 days, it could hardly have been anticipated that the DOL would delay the effective date of the Wage Rule by nearly a year after publication.[5]

---

[5] Indeed, the DOL's arguments against a December 28 effective date strongly implied that the rule would be effective within 60 days after publication. Specifically, the DOL stressed that the operation of two separate waiting periods—under 5 U.S.C. § 553(d) (30 days) and

5

Despite plaintiffs concerns that the DOL is "playing fast and loose" with this court's orders, there is no evidence that the DOL acted in bad faith or that it purposefully misled either the plaintiffs or the court.[6] Instead, the DOL complied with a literal reading of the August 30 and October 27 orders by publishing the Wage Rule on January 18, 2011. *See* Order of October 27 (dkt. 94) ("[T]he DOL [must] publish new rules concerning the calculation of the prevailing wage rate in the H-2B program by [January 18, 2011]."). Accordingly, the inclusion of a delayed effective date in the Wage Rule was not a violation of this court's orders.

2) Does the Wage Rule violate the APA and/or the INA?[7]

**A. Failure to engage in notice and comment on the effective date of the Wage Rule**

Plaintiffs contend that the delayed effective date of the Wage Rule was an integral facet

---

§ 801(a)(3)(A) (60 days)—precluded the DOL from making the new regulations effective by December 28. The DOL stated that it "cannot complete the required notice and comment process along with OIRA's regulatory review procedures in time to make the new rule effective by December 28, 2010, without violating the Administrative Procedure Act and the Congressional Review Act." Dkt. 89 at 1. The natural implication of these arguments was that the new rule would be effective after the operation of the waiting periods—i.e., 60 days after December 28, 2010.

[6] Plaintiff's allegation that the DOL is playing "fast and loose" with the court's orders seems to invoke the doctrine of judicial estoppel. *See Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel prevents parties from "playing fast and loose with the courts"). That doctrine is unavailable, however, because, as noted above, there is no evidence that the DOL acted in bad faith. *See Krystal Cadillac–Olds GMC Truck v. General Motors*, 337 F.3d 314, 319 (3d Cir. 2003) (party asserting judicial estoppel must show, *inter alia*, that "the party to be estopped [took] two positions that are irreconcilably inconsistent" and that the change in position was undertaken in "bad faith").

[7] Because the plaintiffs argue that the Wage Rule violates not only this court's prior orders, but also independently violates the APA, plaintiffs have filed a motion, under Rule 15(d), for leave to file a supplemental pleading that alleges the APA violations discussed above. Because the court will consider all of plaintiffs contentions in the context of the current Motion for an Order Enforcing the Judgment, the motion for leave to file a supplemental pleading will be denied as moot.

of the Rule, and thus that the DOL's failure to give notice of the possible delay was a violation of the APA's notice and comment requirements. Plaintiffs therefore argue that the effective date of the new rule is procedurally defective under the APA. *See generally* 5 U.S.C. § 553(b) & (c) (outlining notice and comment requirement for rulemaking).

The Third Circuit has described the relationship between a proposed rule and a final rule as follows:

> [T]he submission of a proposed rule for comment does not of necessity bind an agency to undertake a new round of notice and comment before it adopts a rule which is different—even substantially different—from the proposed rule. . . . [T]he adequacy of the notice must be tested by determining whether it would fairly apprise interested persons of the "subjects and issues" before the Agency.

*American Iron & Steel Inst. v. EPA*, 568 F.2d 284, 293 (3d Cir. 1977). Where there is a difference between the final rule and the proposed rule, the critical question is whether "the final rule [is] a 'logical outgrowth' of the agency's proposal." *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 543 (D.C. Cir. 1983). A final rule is a "logical outgrowth" of a proposed rule only if interested parties "'should have anticipated' that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period." *Ne. Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 952 (D.C. Cir. 2004) (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 245 (D.C. Cir. 2003)).

Thus in this case, the question is whether the final rule's inclusion of a one-year delay in the effective date was a logical outgrowth of the proposed rule. Although plaintiffs have not cited any authority holding that an agency must always give notice of its intention to delay the

7

effective date of a forthcoming rule,[8] it is apparent that in this case the notice of proposed rulemaking was deficient. The notice said nothing about the possibility of deferring the effective date of the Wage Rule. *See* Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program; Proposed Rule, 75 Fed. Reg. 61578 (Oct. 5, 2010). The public would accordingly be justified in assuming that any delay in the effective date would mirror the minimal delays associated with the issuance of similar wage regulations over the past several decades. *See* Pl.'s Ex. A (dkt. 103-2). Thus it cannot be said that the public "should have anticipated" the possibility of a nearly one-year delay in the effective date of the Wage Rule.

The DOL stresses that neither the APA nor the INA set any restrictions on the ability of an agency to delay the effective date of a regulation. Thus the DOL asserts that "it was within DOL's discretion to determine the date and manner in which to best implement the new prevailing wage rule." Deft's Opp'n at 13 (dkt. 105). It may be true that the DOL has discretion to impose a delayed effective date, but that does not mean it may impose such a delay without engaging in notice and comment—at least where, as in this case, the public could hardly have anticipated such a lengthy delay in implementation. Accordingly, the court finds that the delayed effective date of the Wage Rule is procedurally deficient because such a delay was not a "logical outgrowth" of the proposed rule.

---

[8] The primary case cited by plaintiffs on this issue is *Council of Southern Mountains v. Donovan*, 653 F.2d 573 (D.C. Cir. 1981). But in *Southern Mountains*, the issue was whether the agency was required to engage in notice and comment before deferring an already-established effective date contained in a final rule. Thus *Southern Mountains* is inapposite because the question here is whether an agency must give notice that it is contemplating a deferred effective date, prior to publishing a final rule that may contain such a deferral. In other words, *Southern Mountains* mandates that an agency must give notice before changing the effective date of a final rule, but it says nothing about whether an agency must give notice before issuing a final rule that includes a delayed effective date.

**B. Consideration of hardship to employers**

Plaintiffs also contend that the delayed effective date of the Wage Rule is substantively invalid because the DOL improperly considered hardship to employers as a basis for the delay. The DOL concedes that it cannot "consider employer hardship in determining the wages to be paid or the substance of the new prevailing wage rule." Def.'s Opp'n at 16 n.3 (dkt. 105); *cf. Elton Orchards, Inc. v. Brennan*, 508 F.2d 493, 500 (1st Cir. 1974) ("To recognize a legal right to use alien workers upon a showing of business justification would be to negate the policy which permeates the immigration statutes, that domestic workers rather than aliens be employed wherever possible."). Indeed, the statutory authority for granting H-2 visas leaves no room for consideration of employer hardship, and instead provides simply that a visa may issue "if unemployed persons capable of performing such service or labor cannot be found in this country . . . ." 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

Still, the DOL contends that it "has only considered employer impact in the *implementation* of the new rule, an action that is within the agency's discretion . . . ." Def.'s Opp'n at 16 n.3 (dkt. 105). This distinction is illusory. Delaying the implementation of the Wage Rule requires, by necessity, the continued payment of a lower, invalid wage to H-2B workers. Thus if the DOL cannot, by its own admission, consider employer hardship in setting a prevailing wage, the DOL cannot rely on such hardship to delay the effective date of a new wage rule that will result in higher wages. The District Court for the District of Columbia reached the same conclusion in *NAACP v. Donovan*, 566 F. Supp. 1202 (D.D.C. 1983). Specifically, the *Donovan* court ruled that the DOL could not decide to phase in a wage regime—rather than implement it immediately—where the stated rationale was to alleviate "the economic hardship on

9

small businesses." *Id.* at 1205. The court found the DOL's reasoning to be "faulty" because "[in] administering the labor certification program, DOL is charged with protection of workers." *Id.* at 1206. The court further observed that "[i]t is thus strange indeed for DOL to decrease the wage rate due to workers because of its concern for hardship to *growers*," and it gave such a justification "little weight."[9] This court similarly gives the DOL's justification little weight. For this additional reason, the January 1, 2012 effective date is deficient.

3) Relief

Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(A) & (D). As described above, the January 1, 2012 effective date is invalid because 1) it was not subject to notice and comment, and 2) it was premised on a desire to alleviate employer hardship, in contravention of the INA. Those deficiencies counsel strongly in favor of vacating the effective date. *See Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009) ("Failure to provide the required notice and to invite public comment . . . is a fundamental flaw that normally requires vacatur of the rule." (internal quotation marks omitted));

---

[9] The DOL contends that *Donovan* is inapposite because the phase-in decision in that case was an abandonment, without adequate explanation, of a long-standing agency policy, whereas in this case the new wage rule is not being challenged as an abandonment of past practice. But the DOL improperly focuses on the underlying wage rule, rather than on the effective date, in its effort to distinguish *Donovan*. Here, the decision to impose a considerable delay in implementing the wage rule is indeed an abandonment of past practice. *See* Pl.'s Ex. A (dkt. 103-2) (demonstrating that the vast majority of new regulations involving wage rates for temporary workers went into effect within 30 to 90 days of publication). Accordingly, and as was the case in *Donovan*, the DOL cannot rely on employer hardship to justify a significant departure from past practice.

10

*Coal. for Common Sense in Gov't Procurement v. United States*, 671 F. Supp. 2d 48, 59 (D.D.C. 2009) (clear misinterpretation of governing law "is unquestionably a material deficiency in the regulation").

But under *Allied-Signal Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993), when a court decides whether or not to vacate an unlawful regulation, the court must not only consider "the seriousness of the [rule's] deficiencies"—as described above—but also "the disruptive consequences of an interim change that may itself be changed." Here, the disruptive consequences do not outweigh the deficiencies in the delayed effective date. There will be no regulatory gap because the invalid wage rules remain operative, and the new wage rules—the substance of which has not been challenged—will be implemented on whatever date is chosen by the DOL in accordance with this memorandum and order. The court recognizes that vacatur will impose some disruption—and indeed some hardship—on employers that had previously relied on a January 1, 2012 effective date. However, as discussed above, hardship to employers should carry little weight in determining the implementation of H-2B wage rules. Accordingly, any disruption caused by vacatur is outweighed by the serious deficiencies this court has found in the DOL's decision to delay the effective date of the Wage Rule. The court will therefore vacate the existing effective date of the Wage Rule.

On remand the DOL will be ordered to promulgate an amendment to the Wage Rule, establishing a new effective date for the Rule. It is not improbable that the DOL will be required to engage in notice and comment, however brief, before issuing this amendment. *See Council of S. Mountains, Inc. v. Donovan,* 653 F.2d 573, 580 n.28 (D.C. Cir. 1981) (an order deferring implementation of a regulation is a "substantive rule" if it will have "palpable effects upon the

regulated industry and the public in general" (internal quotation marks omitted)). Nevertheless, because of the critical importance of avoiding the depression of wages paid to U.S. and to H-2B workers, and because of the already protracted delay in implementing a valid prevailing wage regime, the court will expect that, within forty-five (45) days, the DOL will—in compliance with the Administrative Procedure Act, the Immigration and Nationality Act, and this court's orders—announce a new effective date.

      An appropriate order accompanies this memorandum.