UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMITÉ DE APOYO A LOS<br>TRABAJADORES AGRÍCOLAS, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>HILDA SOLIS, et al.,<br><br>    Defendants. | CIVIL ACTION<br><br>No. 09-240 |

December 8, 2011

## OPINION

The Comité de Apoyo a los Trabajadores Agrícolas ("CATA") and other plaintiffs initiated this law suit against Secretary of Labor Hilda Solis and other federal officials in 2009. The suit challenged certain regulations pertaining to the so-called "H-2B" program for the admission to the United States, on a temporary basis, of alien non-agricultural workers (by contrast with the "H-2A" program for the temporary admission of alien agricultural workers). The H-2B program is administered primarily by the Department of Labor ("DOL") and secondarily by the Department of Homeland Security ("DHS"). The H-2B program takes its name from the terminal letters and number of the section of the Immigration and Nationality Act which is the program's statutory foundation. Under 8 U.S.C. § 1101(a)(15)(H)(ii)(b), in order for an alien to be eligible for admission to the United States as an H-2B worker he must "hav[e] a residence in a foreign country which

he has no intention of abandoning" and must be "coming temporarily to the United States to perform [non-agricultural] temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country."

The *CATA* plaintiffs charged that certain of the governing regulations did not comply with statutory directives or purposes. In an opinion of August 31, 2010, this court found in plaintiffs' favor with respect to several issues. Chief among these was DOL's adoption of a four-tier skill-level structure as the standard for calculating the wages to be paid to H-2B workers. The August 31, 2010 opinion stated:

> In the absence of any valid regulatory language authorizing the use of skill levels in determining the prevailing wage rate . . . the four-tier structure of skill levels set out in the guidance letters—which is entirely untethered from any other statutory or regulatory provisions, and which affirmatively creates the wages paid to H-2B workers—constitutes a legislative rule which must be subjected to notice and comment. It has not been so subjected and it . . . is therefore invalid.

*CATA v. Solis* (*CATA I*), No. 09-240, slip op. at 38, 2010 WL 3431761, at *19 (E.D. Pa. Aug. 30, 2010).

This court's determination that the system for determining H-2B wage rates was invalid posed the question of remedy. The August 31, 2010 opinion addressed this issue in the following terms:

> The magnitude of DOL's errors . . . counsels in favor of vacating the regulations. Doing so, however, would remove the agency's default rule for calculating prevailing wages, resulting in a large gap in the prevailing wage regulations. Those regulations are, of course, a central part of DOL's regulatory scheme and of vital interest to both H-2B workers and U.S. workers in the same industries. . . .

2

> These circumstances are similar to those encountered by the D.C. Circuit in *Rodway v. USDA,* 514 F.2d 809 (D.C. Cir. 1975). There, the Department of Agriculture "failed to provide public notice and an opportunity for comment before it adopted regulations establishing an allotment system for the federal food stamp program." *Heartland Reg'l Med. Ctr.* [*v. Sebelius*, 566 F.3d 193, 198-99 (D.C. Cir. 2009)] (discussing *Rodway*). Faced with a serious shortcoming on the part of the agency and with regulations of "critical importance," the court declined to vacate the regulations but ordered the agency "to complete the new rule-making process" within a short period of time. *Rodway*, 514 F.2d at 817-18. Because the issue of wage rates is of similarly central importance, this court will not vacate the regulations but rather, as in *Rodway*, accord the agency 120 days in which to promulgate new, valid regulations for determining the prevailing wage rate in the H-2B program.

*CATA I*, slip op. at 50-51, 2010 WL 3431761, at *25.

In an order dated October 27, 2010, this court clarified that the instruction to "promulgate new, valid regulations" in 120 days was a directive to *publish* new regulations in 120 days, not a direction that new regulations should *go into effect* in 120 days. On January 19, 2011, DOL published new wage regulations (the "Wage Rule") and set January 1, 2012 as the new regulations' effective date.

Plaintiffs filed a motion for an Order Enforcing the Judgment challenging DOL's action in postponing by almost a year—i.e., until January 1, 2012—the putting into effect of the Wage Rule published on January 19, 2011. This court, in a Memorandum/Order dated June 15, 2011, upon taking into account "the critical importance of avoiding the depression of wages paid to U.S. and to H-2B workers, and because of the already protracted delay in implementing a valid prevailing wage regime," announced that "the court will expect that, within forty-five (45) days, the DOL will—in compliance with the

Administrative Procedure Act, the Immigration and Nationality Act, and this court's orders—announce a new effective date." *CATA v. Solis*, No. 09-240, slip op. at 12, 2011 WL 2414555, at *5 (E.D. Pa. June 15, 2010).

On August 1, 2011, after notice and comment, DOL adopted a final rule setting an effective date of September 30, 2011 for the January 19, 2011 Wage Rule. The DOL also began issuing prevailing wage determinations using the new Wage Rule's methodology for calculating wage rates for work performed commencing on the September 30, 2011 effective date of the new Wage Rule.

1.

On September 22, 2011, just eight days before the date on which the new Wage Rule was to go into force, DOL postponed the effective date of the Wage Rule for two months, from September 30, 2011 to November 30, 2011. The agency action followed within a matter of days the initiation in federal courts in Louisiana and Florida of two lawsuits challenging the Wage Rule's validity on a variety of constitutional and statutory grounds: *Louisiana Forestry Association, Inc. v. Solis*, No. 11-1623, in the United States District Court for the Western District of Louisiana, filed September 7, 2011; and *Bayou Lawn & Landscape Services v. Solis*, No. 3:11-0445, in the United States District Court for the Northern District of Florida, Pensacola Division, filed September 21, 2011.

In a statement issued on September 28, 2011, DOL undertook to explain the postponement of the effective date of the Wage Rule:

> The Administrative Procedure Act, at 5 U.S.C. §705, provides that "[w]hen an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review." In consideration of the two pending challenges to the Wage Rule and its new effective date, and the possibility that, in response to the CATA plaintiffs' motion, the litigation will be transferred to another court, the Department is postponing the effective date of the rule from September 30, 2011, until November 30, 2011. This delay will allow the Department to mount an appropriate defense of the rule, and will allow for the orderly resolution of the various claims pending in two Federal courts. The delay will permit the various courts involved in the litigation to determine the appropriate venue for the resolution of all claims, and allow the Department to avoid the possibility of administering the H-2B program under potentially conflicting court orders. In the interest of administering a nationwide program in a uniform fashion during the pending litigation, the Department has determined that, in the interest of justice, a delay in the effective date is necessary.

Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, 76 Fed. Reg. 59,896, 59,897 (Sept. 28, 2011).

### 2.

The *CATA* plaintiffs have moved to intervene in *Louisiana Forestry Association, Inc. v. Solis* and in *Bayou Lawn & Landscape & Services v. Solis*, and the DOL and the *CATA* plaintiffs have moved to transfer the two cases to this court. On November 23, 2011, the *Bayou Lawn* court denied the *CATA* plaintiffs' motion to intervene. As of this writing (1) the motion of the *CATA* plaintiffs to intervene in *Louisiana Forestry* remains pending and (2) the motions of DOL and of the *CATA* plaintiffs to transfer both *Bayou Lawn* and *Louisiana Forestry* to this court remain pending.

### 3.

On October 3, 2011, the *CATA* plaintiffs filed in this court a Motion for Further

Relief to Compel Compliance with Court Orders. The "further relief" sought by plaintiff was an order in two parts:

> (1) prohibiting DOL from further postponing the effective date of the January 29, 2011 Wage Rule beyond November 30, 2011, and (2) vacating the skill-level methodology for calculating prevailing wages—which this court declared invalid in its August 31, 2010 [ ] Opinion and Order (Doc. 80)—effective November 30, 2011.

On October 17, 2011, DOL filed an Opposition to Plaintiffs' Motion for Further Relief. On October 31, 2011, plaintiffs filed a Reply Brief in Support of Motion for Further Relief. On November 4, 2011, DOL filed a Sur-Reply in Opposition to Plaintiffs' Motion for Further Relief.

On November 9, 2011, oral argument was held on plaintiffs' October 3, 2011 Motion for Further Relief. At that argument this court pointed out that plaintiffs, in their October 31, 2011 Reply Brief, had proposed a procedural compromise that, plaintiffs contended, had the potential to resolve the parties' differences. Plaintiffs' proposal was as follows:

> Plaintiffs concede that if DOL could postpone the effective date of the January 19, 2011 methodology in a way that was consistent with its regulatory mandate and with the Orders of this Court by, for example, requiring employers to commit to pay lawful wages when set (as opposed to invalid skill level wages) retroactive to the date of the postponement when those wages are established, it should be allowed to do so.

Since DOL had not, in its Sur-Reply, commented on plaintiffs' proposal, DOL was requested to express its views in a submission to be filed by November 14, 2011. In particular this court wished to be advised whether, in DOL's view, the court had authority

6

to direct the adoption of the substance of plaintiffs' proposal in order "to preserve status or rights pending conclusion of the review proceedings," pursuant to 5 U.S.C. § 705. Section 705 provides as follows:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

DOL, in its November 14 submission, stated that "The [Administrative Procedure Act] authorizes the Court to grant interim relief, *see* 5 U.S.C. § 705, but that authority does not permit the Court to order affirmative injunctive relief."

**4.**

On November 18, 2011, President Obama signed into law the Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552. The Appropriations Act provides in part:

> None of the funds made available by this or any other Act for fiscal year 2012 may be used to implement, administer, or enforce, prior to January 1, 2012, the rule entitled "Wage Methodology for the Temporary Non-agricultural Employment H-2B Program" published by the Department of Labor in the Federal Register on January 19, 2011 (76 Fed. Reg. 3452 et seq.).

*Id.* div. B, tit. V, § 546, 125 Stat. at 640. The Continuing Appropriations Act was accompanied by a conference report explaining the legislative intention with respect to

the quoted statutory provision:

> In making prevailing wage determinations for the H-2B non-immigrant visa program for employment prior to January 1, 2012, the conferees direct the Secretary of Labor to continue to apply the rule entitled "Labor Certification Process and Enforcement for Temporary Employment in Occupations Other Than Agriculture or Registered Nursing in the United States (H-2B Workers), and Other Technical Changes" published by the Department of Labor on December 19, 2008 (73 Fed. Reg. 78020 et seq.).

H.R. Rep. No. 112-284, at ___ (2011) (Conf. Rep.).

### 5.

Prior to the President's signing the Continuing Appropriations Act into law on November 18, 2011, the legal situation with respect to the wage regulation governing the H-2B program had been the following: on November 30, 2011, the January 19, 2011 Wage Rule was to go into effect, replacing the December 2008 wage regulation—a regulation whose legality was, and remains, a matter of substantial doubt[1]—as the governing wage directive for the H-2B program.  But the effect of the November 18, 2011 law was to continue the December 2008 wage regulation in force for a short period—November 30, 2011 to December 31, 2011.  Congress, through the Continuing Appropriations Act, threw a protective arm around the December 2008 wage regulation, presumably insulating it from challenge on statutory (as distinct from constitutional) grounds for the balance of this calendar year.

---

[1] See *infra* section 6 of this opinion.

**6.**

The 2008 wage regulation appears to have a remarkable capacity for survival. Over a year ago, in its August 30, 2010 opinion, this court found that the regulation "was made without notice and comment . . . a fundamental flaw that normally requires vacatur of the rule;" but (as noted *supra*, on page 3 of this opinion) this court decided against vacatur, because, at that time, which was prior to the formulation of the January 19, 2011 Wage Rule, vacatur "would [have] remove[d] the agency's default rule for calculating prevailing wages, resulting in a large gap in the prevailing wage regulations." *CATA I*, slip op. at 50-51, 2010 WL 3431761, at *25. Very recently, in its October 17, 2011 submission, DOL acknowledged that the 2008 wage regulation is substantively flawed:

> Plaintiffs are correct that DOL found on remand that it could not justify the continued use of the four-tier prevailing wage system. During rulemaking proceedings, based on publicly available data, DOL stated in the preambles to the proposed and final rules that the vast majority of H-2B certifications involved Level I wage determinations, which are well below the average rate of wages reported by the Bureau of Labor Statistics. *See* 74 Fed. Reg. 61,580; 76 Fed. Reg. at 3459, 3463. As a result, the four-tier structure artificially lowers the wage rates to a point that they no longer represent a market based wage for the relevant occupations, which has a depressive effect on the wages of similarly situated United States workers. *See* 76 Fed. Reg. at 3463. When DOL determined on remand that it could not justify the invalidated four-tier prevailing wage regime, it was "functionally regulating on a blank slate even though the [December 2008] regulation continued to remain on the books." *Medical Waste Institute* [*and Energy Recovery Council v. EPA*, 645 F.3d 420, 426 (D.C. Cir. 2011)]. Thus, the December 2008 regulation is moribund, awaiting its final burial rites when the successor regulation finally takes its place.

Def.'s Opp'n to Pl.'s Mot. for Further Relief at 11-12 (second alteration added).

9

One's initial reaction might well be that since, unlike the situation addressed by this court in its August 30, 2010 opinion, there now is a "successor regulation"—namely, the January 19, 2011 Wage Rule—the time had at last come for the burial, via vacatur, of the "moribund" 2008 regulation.  But DOL remains resistant to vacatur: "If this Court were finally to bury the December 2008 rule by vacating it at this point in time, there is the grave possibility that the agency may be operating without a prevailing wage rule in the event a reviewing court strikes the January 2011 rule as somehow defective."  Def.'s [October 17, 2011] Opp'n to Pl.'s Mot. for Further Relief at 12.

DOL's objection to vacatur seems sound.  The Wage Rule is the target both of the complaint in *Louisiana Forestry*, pending in the District Court for the Western District of Louisiana, and of the complaint in *Bayou Lawn*, pending in the District Court for the Northern District of Florida.  And if either of these cases is transferred to this court, the Wage Rule would, presumably, be the object of challenge here.  If, in any of these venues, the district court were to grant a preliminary injunction requiring DOL not to utilize the Wage Rule in administering the H-2B program because the plaintiffs had demonstrated a substantial likelihood of success, it would be important for DOL to have the "moribund" 2008 wage regulation available as a potential fall-back structure to govern the H-2B program during further proceedings.[2]

---

[2] It would seem not unlikely that a grant of a preliminary injunction barring DOL from utilizing the Wage Rule in administering the H-2B program would be appealed; if so, the enjoining court may have to consider whether the preliminary injunction should be enforced, or stayed, pending appeal.

DOL's need that the discredited 2008 wage regulation not be vacated would appear to be limited to the potential scenario just described: an injunction—or, conceivably, a further statute—barring utilization by DOL of the Wage Rule in administering the H-2B program. For this reason, in the Order that follows, DOL will be directed not to utilize the 2008 wage regulation in administering the H-2B program, except to address the described injunctive scenario, or a statutory variant, if it should arise.

    /s/ Louis H. Pollak
Louis H. Pollak, J