IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMITÉ DE APOYO A LOS | : | CIVIL ACTION |
| TRABAJADORES AGRICOLAS, et al. | : | |
| v. | : | NO. 09-240 |
| THOMAS E. PEREZ, Secretary of the | : | |
| Department of Labor, et al. | : | (Filed in Consolidated C.A. No. 13-7213) |

MEMORANDUM

Legrome D. Davis, J.                                                    September 10, 2014

Plaintiffs sue for judicial review of the agency's rules governing applications for the

employment of foreign workers under the "H-2B program," Immigration and Nationality Act of

1952 (INA), 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b) (2014), and regulations promulgated thereunder, 8

C.F.R. § 214.2 and 20 C.F.R., Part 655, Subpart A.[1]  Plaintiff associations – Comité de Apoyo a

los Trabajadores Agricolas, Pineros y Campesinos Unidos del Noroeste, the Northwest Forest

Worker Center, formerly known as the Alliance of Forest Workers and Harvesters – sue on

behalf of their members.  Plaintiff Salvador Martinez Barrera sues on his own behalf.[2]

Defendants are the Secretary of Labor, Hilda Solis (now Thomas E. Perez), the Department of

Labor (DOL), Alexander J. Passantino, Acting Administrator of DOL's Wage and Hour

Division, Secretary of Homeland Security, Janet Napolitano (now Jeh Johnson), and the

Department of Homeland Security (DHS).  See Fed. R. Civ. P. 25(d) (successor of a public

officer who is a party in an official capacity, but ceases to hold office while the action is pending,

is automatically substituted as a party).  Jurisdiction is 28 U.S.C. § 1331.

---

[1]  Subpart A establishes "the minimum level of wages, terms, benefits, and conditions for the particular job opportunities, below which similarly employed U.S. workers would be adversely affected . . . ."  20 C.F.R. § 655.0(2).

[2]  In this action, Plaintiffs have not moved for class certification.  Plaintiff Barrera was named as a representative of a class of H-2B workers identified in another action, Rivera, et al. v. Brickman Group LLC, et al., C.A. No. 05-1518 (E.D. Pa., terminated Oct. 2, 2008).  See Compl. ¶ 19 (Doc. No. 1).

Here, the scope and limitations of review are defined by the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-583, 701-706, 801-808, 3105, 3344, 6362, 7562.  Chehazeh v. Att'y Gen. of U.S., 666 F.3d 118, 125 & n.11 (3d Cir. 2012).  The APA "provides the statutory structure on which federal administrative law is built."[3]  1 Richard J. Pierce, Jr., Administrative Law Treatise, § 1.1 at 2 (5th ed. 2010).

Plaintiffs (collectively, "CATA") move to vacate regulations previously held invalid by this Court and remanded to the agency.  See Order & Mem., dated August 30, 2010 (Doc. Nos. 80, 81); Comité de Apoyo a los Trabajadores Agricolas, et al. v. Solis, et al. ("CATA I"), No. 09-240, 2010 WL 3431761, at *8-16, 25-26 (E.D. Pa. Aug. 30, 2010) (Pollak, J.).  In effect, the motion is tantamount to a petition for rulemaking.  5 U.S.C. §§ 553(e), 555(e) (procedural right to file for such relief).[4]  It aims at compelling Defendants to engage in rulemaking to fill regulatory gaps that would be created by the Court's grant of the requested vacatur.  See Pls. Mot. (Doc. No. 194); Pls. Br. (Doc. No. 194-1 at 5, 12); Pls. Reply (Doc. No. 46 at 4, 15-16).

---

[3]  The Administrative Procedure Act (APA) permits judicial review for any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," 5 U.S.C. § 702, provided that the "agency action is [not] committed to agency discretion by law," id. § 701(a)(2); no "statutes preclude judicial review, id. § 701(a)(1); and the action is "final agency action," id. § 704. Chehazeh v. Att'y Gen. of U.S., 666 F.3d 118, 126 (3d Cir. 2012). Here, there are no applicable preclusion-of-review statutes and no special review provisions in the statutes governing the agency. "'[I]n the absence or inadequacy' of any 'special statutory review' provision, review may take 'any applicable form of legal action.'" Id. at 126 (citing Smriko v. Ashcroft, 387 F.3d 279, 290-91 (3d Cir. 2004) (quoting 5 U.S.C. § 703)).

[4]  The motion is styled as one to "Compel Further Compliance With the Judgment." Pls. Mot. & Br. (Doc. Nos. 194, 194-1). It is suggested that the DHS and the DOL jointly promulgate new regulations immediately replacing the provisions challenged here. See, e.g., Pls. Br. (Doc. No. 194-1 at 12). But Plaintiffs do not identify any statutory basis for compelling the agency to do so. Only the APA's provisions for judicial review are cited. The motion is the functional equivalent of a petition for rulemaking, and it will be treated as such. The APA requires agencies to permit interested persons to "petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). The agency must give "[p]rompt notice of the denial in whole or in part of [such] a written application, petition, or other request," and "the notice shall be accompanied by a brief statement of the grounds for denial." 5 U.S.C. § 555(e). A formal petition is not required. See, e.g., Am. Horse Protection Ass'n v. Lyng, 812 F.2d 1, 5 (D.C. Cir. 1987).

Case 2:09-cv-00240-LDD   Document 198   Filed 09/11/14   Page 3 of 23

This Court's decision, dated August 30, 2010, invalidated four regulatory provisions governing applications by employers for certification of the employment of H-2B workers:

> (1) 20 C.F.R. § 655.15(g), concerning when and how H-2B employers must contact unions as a potential source of domestic labor; (2) the portion of 20 C.F.R. § 655.4 defining "full time"; (3) the portion of 20 C.F.R. § 655.4 defining "job contractor"; and (4) 20 C.F.R. § 655.22(k), insofar as that provision permits the clients of job contractors to hire H-2B workers without submitting an application to the Department of Labor. The provisions described in (1) - (3) were remanded without vacatur; the provision described in (4) was vacated and remanded.

Comité de Apoyo a los Trabajadores Agricolas, et al. v. Solis, et al. ("CATA II"), No. 09-240, 2010 WL 2934995, *1 (E.D. Pa. July 20, 2011) (Pollak, J.). The invalidated provisions are contained in the H-2B regulation that was published in the Federal Register on December 19, 2008, and took effect on January 18, 2009. See "Labor Certification Process . . . ," 73 Fed. Reg. 78,020 (Dec. 19, 2008), codified at 20 C.F.R., Part 655 ("2008 Regulation"). Each of the three provisions remanded without vacatur was ruled procedurally invalid because "DOL provided no rational explanation for its policy choices." CATA I, 2010 WL 3431761, at *12-16, 25.

On remand, the agency amended the rules governing certification of the employment of H-2B workers, promulgating through notice and comment procedures a replacement regulation. See Notice of Proposed Rulemaking ("NPRM"), "Temporary Non-Agricultural Employment of H-2B Aliens in the United States," 76 Fed. Reg. 15,130 (Mar. 18, 2011). See also final rule, "Temporary Non-Agricultural Employment of H-2B Aliens in the United States, Part II," 77 Fed. Reg. 10,038 (Feb. 21, 2012) ("2012 Regulation"). According to Defendants, the 2012 Regulation "corrected the procedural defects" of each of the invalidated provisions described above. Defs. Resp., (Doc. No. 40 at 1) (citing 77 Fed. Reg. 10,038, 10,046-47, 10,068-69, 10,088 (Feb. 21, 2012)). See also NPRM, 76 Fed. Reg. 15,135-35, 15,151, 15,137-38 (Mar. 18,

3

2011).  This changed the rules for contacting unions as a source for the recruitment of H-2B workers, and the definitions of full-time work and job contractor.[5]

On April 26, 2012, <u>Bayou Lawn & Landscape Services v. Secretary of Labor</u> ("Bayou I"), No. 12-cv-183 MCR (N.D. Fla.) (M. Casey Rogers, J.) (discussed <u>infra</u>) granted the plaintiff H-2B employers' request for a preliminary injunction of the 2012 Regulation.  At present, that injunction remains in effect, pending adjudication of the <u>Bayou</u> plaintiffs' claims for a premanent injunction of the 2012 Regulation.  On May 16, 2012, the DOL notified the regulated public that <u>Bayou</u> enjoined the 2012 Regulation, and the 2008 Regulation has "continuing effectiveness . . . until such time as further judicial or other action suspends or otherwise nullifies the order" in <u>Bayou</u>.  DOL's Notice and Guidance, 77 Fed. Reg. 28,784 (May 16, 2012).

The instant motion to compel requests that the 2008 regulatory provisions concerning union recruitment, and the definitions of full-time work and job contractor – each of which was remanded without vacatur – be vacated now.  <u>See</u> Pls. Br. (Doc. No. 194-1 at 6-11); Pls. Reply (Doc. No. 46 at 4, 15-16).  The urgency of the request is said to arise from the serious adverse effect upon U.S. workers created by DOL's present use of the invalidated 2008 rules.  For that reason, it is Plaintiffs' position, vacatur is appropriate because these rules are not only procedurally invalid but also, substantively flawed.

But Defendants correctly note that "vacatur would necessarily lead to a regulatory void." Defs. Resp. (Doc. No. 40 at 15).  And Plaintiffs effectively acknowledge that there are neither

---

[5]  "In the Notice of Proposed Rulemaking (NPRM) published March 18, 2011 (76 FR 15130), we proposed to amend the particular provisions that were invalidated by the Court [<u>CATA I</u>], including specifying when H-2B employers must contact unions as a potential source of labor . . . and providing a new definition of full-time and a slightly modified definition of job contractor . . . ."  2012 Regulation, 77 Fed. Reg. 10,038, 10,038 (Feb. 21, 2012).

predecessor nor successor rules to replace the challenged 2008 rules.  See Pls. Br. (Doc. No. 194-1 at 5,12 (citing "lawful," "viable alternatives," and regulatory "tools to continue . . . the H-2B program without interruption" – i.e., proposing joint rulemaking by DHS and DOL, even though DHS is not a party to this action)).  Plaintiffs' strategy in requesting vacatur is clear:

> U.S. workers should not have to continue laboring under invalid and substandard . . . regulations while they await for the uncertain outcome of that case [Bayou].
>
> * * *
>
> Realistically, vacatur of the . . . rules will simply require DOL to issue new regulations . . . . Moreover, because DOL has already promulgated such regulations as part of the enjoined 2012 rule-making, issuing new regulations should not pose a major logistical problem for the Department.
>
> * * *
>
> [T]he Bayou litigation has been going on for nearly two years [now more than that] and is still in the district court. . . . [T]here is no clear end in sight to the Bayou litigation.  It could, conceivably, go on for several more years before a final decision is issued by the 11th Circuit and, even then, there is no guarantee that the current injunction will be dissolved.  U.S. workers should not have to wait indefinitely to be free from the adverse effects of the substandard 2008 . . . regulations simply because DOL hopes that someday it will be successful in the Bayou litigation.
>
> * * *
>
> Given the relative simplicity of the issues involved, and the 2012 rule-making the Department has already completed on these very issues, it should not be difficult to formulate substitute rules in short order.

Pls. Reply (Doc. No. 46 at 3, 4 & n.3, 15-16).  Vacatur of the challenged 2008 regulatory provisions is but the first step towards the preferred remedy – that is, expedited rulemaking now as prescribed by Plaintiffs.[6]

Defendants respond that "vacatur is either unnecessary or harmful" for several reasons.

Defs. Resp. (Doc. No. 40 at 2-3).  In addition, they request that the motion to compel be denied

---

[6]  Plaintiffs do not challenge the rules contained in the 2012 Regulation, instead viewing them as improvements to the H-2B program.  The 2012 Regulation, they say, "substantially changed all three of the challenged rules to provide for greater protection for U.S. workers and better recruitment through unions."  See Pls. Br. (Doc. No. 194-1 at 7); see also id. at 12 (suggesting DHS and DOL together "simply re-publish[] the entire 2012 H-2B regulations").

in deference to the agency's and the government's ongoing efforts to implement the 2012

Regulation by actively defending it in <u>Bayou</u>.  Denial of the motion, they submit, would permit

the agency to "continue pursuing its legal defense of the [2012] replacement rule"  and the

government to "continue[ ] to defend the comprehensive [2012] rule and DOL's authority to

issue legislative rules in the H-2B program."  <u>Id.</u> at 2, 6.

I.      <u>THE PARTIES' CONTENTIONS</u>

Specifically, the parties' respective positions on the demerits of the challenged 2008

rules, and the merits of the improved 2012 rules, are not so far apart.  As to the participation of

job contractors in the H-2B program,[7] both sides agree that Judge Pollock vacated that portion of

the 2008 Regulation "insofar as it permits only job contractors, and not their clients to file

certification applications."[8]  <u>CATA I</u>, 2010 WL 3431761, at *15-16, 25, 27 (vacating that portion

---

[7]  A "job contractor" is "a person, association, firm, or a corporation that meets the definition of an
employer and who contracts services or labor on a temporary basis to one or more employers, which is not
an affiliate, branch or subsidiary of the job contractor, and where the job contractor will not exercise any
supervision or control in the performance of the services or labor to be performed other than hiring, paying,
and firing the workers." 20 C.F.R. § 655.4 (2008). A job contractor who is an employer is required to attest
that "it will not place any H-2B workers employed pursuant to the labor certification application with any
other employer or at another employer's worksite unless" certain conditions exist. <u>Id.</u> § 655.22(k) (2008).
Those conditions are (1) that the contractor first makes "a written bona fide inquiry" as to whether the other
employer has displaced or intends to displace any similarly employed U.S. workers within the areas of
intended employment, and receives a negative response, and (2) "[a]ll worksites are listed" on the
contractor's application. <u>Id.</u> "[I]t is both uncontested by the parties and implicit in § 655.22(k) that the
contractor's clients – the end-point employers – are exempt from any attestation requirements." <u>CATA I</u>,
2010 WL 3431761, at * 15.

[8]  It was ruled that requiring only contractors to file for labor certifications is barred by the governing
regulations issued by the Department of Homeland Security (DHS):  "Together, these provisions clearly
mandate that (1) every employer must file a petition with DHS, and (2) before doing so, the employer must
also file a certification application with DOL.  By allowing certain employers *not* to file certification
applications, DOL's regulations unambiguously contradict this mandate." <u>CATA I</u>, 2010 WL 3431761, at
*16 (citing 8 C.F.R. § 214.2(h)(2)(i)(C); <u>id.</u> § 214.2(h)(6)(iii)(A)).  Moreover, it was further ruled that "for
DOL to require all employers to file applications on a going-forward basis appears likely to be only
minimally disruptive." <u>Id.</u>

of 20 C.F.R. § 655.22(k) and remanding to agency for further proceedings). At present, it is Defendants' policy to prohibit job contractors from filing labor certifications on behalf of their client-employers. Through case-by-case adjudication of each H-2B application, the agency aims to certify applications filed only by employers and not by contractors, except in limited circumstances where contractors are direct or joint employers of H-2B workers. Defs. Resp. (Doc. No. 40 at 2, 9-10). See NPRM, 76 Fed. Reg. 15,130, 15,137 (Mar. 18, 2011).[9] Plaintiffs largely agree with these requirements, but propose stricter control of contractors in order to reduce the risk that some might evade the DOL's scrutiny during the application process. See, e.g., Pls. Reply (Doc. No. 46 at 7-9).

Judge Pollak invalidated, but did not vacate the definition of job contractor, 20 C.F.R. § 655.4 (2008); see CATA I, 2010 WL 3431761, at *16, 25. It was ruled that the final definition contained in the 2008 Regulation is arbitrary in violation of the APA, because it departs from the agency's traditional definition of a job contractor, but is not rationally connected to the agency's stated goal of clarifying the definition. Id. at *16. At present, the agency ensures compliance with the standards set forth in CATA I through case-by-case adjudication.

Plaintiffs would not object to the case-by-case adjudication of each H-2B application "if a reasonable definition of 'job contractor' is used." Pls. Reply (Doc. No. 46 at 5, 5-9). But, they maintain, the 2008 definition is harmful to U.S. workers. See, e.g., id. at 9 ("continued use of the

---

[9] "The Department proposes to exclude job contractors from being considered for participation in the H-2B program. . . . It is the Department's view that a job contractor's ongoing need is by its very nature permanent rather than temporary and therefore the job contractor does not qualify to participate in the program. * * * As a result of the order issued by [Judge Pollak in CATA I], the Department has stopped accepting labor certification applications submitted by job contractors." NPRM, 76 Fed. Reg. 15130, 15137 (Mar. 18, 2011).

invalid definition of 'job contractor' facilitates keeping DOL in the dark about the true nature of subcontracting businesses").  And Plaintiffs do not present any objections to the "broader definition of job contractor" contained in the 2012 Regulation.  See id. at 6 & n.4.

Judge Pollak also invalidated, but did not vacate the 2008 requirements for union recruitment, 20 C.F.R. § 655.15(g) (2008); see CATA I, 2010 WL 3431761, at *12-13, 25.  The 2008 rules do not require employers to contact unions, unless the employer "is already a party to a collective bargaining agreement that covers the occupation at the worksite that is the subject of the H-2B application."  73 Fed. Reg. 78,020, 78,032 (Dec. 19, 2008).  It was ruled that the agency's rationale for this regulation was arbitrary – that is, ambiguous and insufficient to explain the change in the union recruitment rule – all in violation of the APA.  CATA I, 2010 WL 3431761, at *12-13, 25.  During notice and comment for the 2012 Regulation, "DOL declined to establish an absolute rule regarding union recruitment, but would determine on a case-by-case basis whether further recruitment through a particular union is appropriate for a specific employer's job under the circumstances."  Defs. Resp. (Doc. No. 40 at 12).  See NPRM, 76 Fed. Reg. 15,130, 15,151 (Mar. 18, 2011); 2012 Regulation, 77 Fed. Reg. 10,038, 10,088-89 (Feb. 21, 2012).  Plaintiffs endorse the 2012 Regulation "that increased minimum recruitment efforts" and set "a higher standard of union recruitment."  Pls. Reply (Doc. No. 46 at 2-3, 12-13).

In addition, Judge Pollak invalidated, but did not vacate the definition of full-time work, 20 C.F.R. § 655.4 (2008); see CATA I, 2010 WL 3431761, at *13-15, 25.  The 2008 definition lowered full-time work from 35 to 30 hours per week.  See 73 Fed. Reg. 78,020, 78,024, 78,054-55 (Dec. 19, 2008).  This  was ruled to be arbitrary because the agency offered no explanation for the alteration.  CATA I, 2010 WL 3431761, at *13.  It was also ruled to be a violation of the

APA because there was nothing in the 2008 Regulation suggesting that the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made.  Id.  The parties largely agree upon the demerits of the 2008 rule.  And Plaintiffs do not present any objections to the 2012 Regulation's requirement of at least 35 hours per week for full-time work.[10]  Pls. Br. (Doc. No. 46 at 2-3, 11-12); Defs. Resp. (Doc. No. 40 at 11-13).

It is Defendants' position that this Court should decline to take any further action as to the requirements for union recruitment and the definition of full-time "because DOL already addressed these issues through further notice and comment rulemaking, which the agency is actively defending in current litigation."  See Defs. Resp. (Doc. No. 40 at 2, 12-13).  This rationale equally applies to the challenged definition of job contractor.  See id. at 10 ("DOL addressed the issue of job contractors in a more global manner through notice and comment rulemaking (citing 2012 Regulation, 77 Fed. Reg. 10,038, 10,068-69 (Feb. 21, 2012)).

As to the rules for union recruitment and the definition of full-time work, Plaintiffs see no reason to wait for resolution of Bayou before new rules are promulgated.  See Pls. Br. (Doc. No. 46 at 13-14) ("there is no clear end in sight to the Bayou litigation").  It is their position that vacatur is appropriate because the agency essentially abandoned the invalidated 2008 regulatory provisions as irredeemable, without explanation, and "gave rational explanations for far higher standards" in the 2012 Regulation.  Id. at 10-14.

---

[10]  After considering additional public comments and empirical data from the Bureau of Labor Statistics during the proposed rulemaking for the 2012 Regulation, the agency "decided to retain the proposed definition of at least 35 hours per week, which more accurately reflects full-time employment expectations than the current 30-hour definition, will not compromise worker protections, and is consistent with other existing Department standards and practices in the industries that currently use the H-2B program to obtain workers."  2012 Regulation, 77 Fed. Reg. 10,038, 10,049 (Feb. 21, 2012).  The agency's "new defintion of full-time is more adequately supported by empirical evidence, industry practice, and public comments."  Defs. Resp. (Doc. No. 40 at 12-13).

On the other hand, Defendants contend that because the DHS has not promulgated a rule for union recuitment, see 20 C.F.R. § 655.15(g), or a rule for full-time employment, see 8 C.F.R. §§ 214.2(h)(l)(ii)(D), 214.2(h)(6)(i), the requested vacatur of the DOL's regulations could lead to "perverse" and harmful consequences to the H-2B program and the domestic labor market. For example, it is submitted that vacatur would allow:

> employers to apply for part-time employment of H-2B workers during the hiatus between vacatur and the publication of another replacement rule . . . . [And it would allow] employers with collective bargaining agreements to avoid contacting unions as a source of recruitment, which would be less restrictive than the current regulation under the 2008 rule. . . . A vacatur . . . would create the complete absence of a union recruitment rule, which would eliminate a source of recruitment.

Defs. Resp. (Doc. No. 40 at 3, 14-15). It is Defendants' position that denial of vacatur would avoid such a "regulatory void" and "disruptive regulatory hiatus." Id. at 15.

Furthermore, Defendants submit that this Court should abstain from ruling on the motion to compel because in Bayou, the government is actively defending the agency's authority to promulgate the 2012 Regulation – including the very rules at issue here:

> DOL is actively in the process of implementing the new [2012] rule that will replace the invalidated parts of the 2008 rule. Under these circumstances, the Court should allow the government further opportunity to prevail in related litigation without forcing further rulemaking on the issues directly relevant in ongoing litigation.

Defs. Resp. (Doc. No. 40 at 13-14).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual background and procedural history of this case have been set out in previous memoranda issued in related cases. See CATA I, No. 09-240, supra; Comité de Apoyo a los Trabajadores Agricolas v. Solis ("CATA III"), No. 09-240, 933 F. Supp. 2d 700 (E.D. Pa. Mar. 21, 2013) (Davis, J.) (vacating the 2008 H-2B Wage Rule). See also La. Forestry Ass'n, Inc. v.

Sec'y U.S. Dept. of Labor,  No. 11-7687, 889 F. Supp. 2d 711 (E.D. Pa. Aug. 20, 2012) (Davis, J.), aff'd, 745 F.3d 653 (3d Cir. Feb. 5, 2014) (ruling that the Secretary of Labor has rulemaking authority to determine and certify to DHS that an H-2B application comports with the INA's requirements).  Only information most relevant to this motion is recited here.

On August 30, 2010, this Court invalidated but did not set a deadline for revision of the challenged regulatory provisions.  CATA I, 2010 WL 3431761, at *24-25; CATA II, 2011 WL 2934995, at *1.  On January 24, 2011, Plaintiffs filed a Motion for an Order Enforcing the Judgment (Doc. No. 103).  That motion asked the Court to "'set a date certain by which DOL must promulgate new final regulations' addressing the four invalidated provisions described above."  Id., 2011 WL 2934995, at *1.  Judge Pollak ruled:

> [P]laintiffs have provided no compelling justification for imposing a deadline at this juncture.  Instead, plaintiffs have simply stated that "[f]ailure to establish a legal deadline for promulgation of final regulations as to these issues could result in significant delay . . . which would have an adverse impact on domestic workers." [Plaintiffs' Request for Expedited Consideration, ¶ 19, Doc. No. 113 at 7.]  Such a generalized desire for expediency is insufficient to warrant judicial intrusion into the DOL's rulemaking timetable.

Id.  Moreover, Judge Pollak noted that Plaintiffs disregarded the fact that the agency's March 18, 2011 NPRM addressed several facets of the H-2B program other than the four provisions at issue here.  Id., 2011 WL 2934995, at *2.  In light of that omission, it was further ruled that:

> [P]laintiffs' requested relief would amount to an instruction to DOL to carve a sub-rule out of the NPRM, to filter out those comments relevant to the sub-rule, and then to promulgate the final sub-rule on an expedited basis.  This intrusion into the Rulemaking process cannot be justified merely because the plaintiffs would like the DOL to act more quickly.

Id.  Accordingly, the motion to enforce judgment was denied.  See Order, dated July 11, 2011 (Doc. No. 123).

11

On April 16, 2012, shortly before the 2012 Regulation was to go into effect on April 23, 2012, a group of employers and affiliated associations sued in the U.S. District Court for the Northern District of Florida for judicial review of the 2012 Regulation under the APA.  Bayou I, supra.  That complaint seeks declaratory and injunctive relief primarily on the ground that the Secretary of Labor lacks legislative rulemaking authority to issue the 2012 Regulation.  See Bayou Compl. ¶¶ 55-60 (Doc. No. 1).  Also on April 16, 2012, the Bayou Plaintiffs moved for a temporary restraining order and preliminary injunction precluding the agency from implementing or enforcing the 2012 Regulation.  Bayou I (Doc. Nos. 2, 5, 6).  On April 26, 2012, the District Court granted the requested preliminary injunction.  Id. (Doc. No. 24).

On May 11, 2012, the Bayou Defendants appealed the grant of a preliminary injunction to the Eleventh Circuit.  Bayou I (Doc. No. 36).  On April 1, 2013, the Eleventh Circuit affirmed the preliminary injunction, ruling that the Secretary of Labor and the DOL lack authority to promulgate legislative rules, such as the 2012 Regulation.[11]  Id., Op., dated Apr. 1, 2013 (Doc. No. 57), and Judgment, entered Apr. 1, 2013 (Doc. No. 58); Bayou Lawn & Landscape Servs. v. Sec'y of Labor ("Bayou II"), 713 F.3d 1080 (11th Cir. 2013).  The Eleventh Circuit rejected the

---

[11]  The Immigration and Nationality Act, as amended (INA), provides for the classification and admission of temporary non-agricultural H-2B workers "if unemployed persons capable of performing such service or labor cannot be found in this county." 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Congress delegated broad discretion to the Secretary of DHS to determine the terms and conditions for admitting H-2B nonimmigrant workers, see 8 U.S.C. § 1184(a)(1). However, Congress directed the Secretary of DHS to consult with appropriate agencies of the government before allowing employers to import temporary foreign laborers, see 8 U.S.C. § 1184(c)(1). In 2008, DHS acknowledged that it lacks sufficient expertise to make labor market determinations in the H-2B program and DOL would continue to determine whether a proposal to employ H-2B workers would adversely affect the wages and working conditions of United States workers. See 73 Fed. Reg. 78,104, 78,107, 78,110 (Dec. 19, 2008). The 2012 Regulation – a legislative rule promulgated through notice and comment rulemaking – is the DOL's advice to DHS for the determination of whether employers should be permitted to import H-2B workers into the United States without adversely affecting the domestic labor market.

agency's argument that it has rulemaking authority in the context of the H-2B program pursuant to a lawful conditioning by DHS of its authority to grant or deny H-2B visa petitions on a decision by the DOL to certify an H-2B labor application:

> DHS was given overall responsibility, including rulemaking authority, for the H-2B program. DOL was designated a consultant. It cannot boot strap that supporting role into a co-equal one.

Bayou II, 713 F.3d at 1084. The case was remanded to the District Court for adjudication of the Bayou Plaintiffs' claims.

On remand, the Bayou Defendants moved on September 3, 2013, for summary judgment on all claims contained in the complaint. Bayou Defs. Resp. (Doc. No. 60 at 2). Their position is grounded on the assertion that the court "lacks jurisdiction to review the process by which the Secretary of Homeland Security consults with the Secretary of Labor to determine whether employers may import foreign workers into the United States." Id. Bayou Defendants: "Because the consultation process between the Secretary of Homeland Security and the Secretary of Labor is committed to agency discretion by law, there is no judicially manageable standard by which the Court may review this consultation." Id. On September 9, 2013, the Bayou Plaintiffs cross-moved for summary judgment as to all claims contained in the complaint, requesting an order vacating and permanently enjoining implementation and enforcement of the 2012 Regulation. Bayou Pls. Mot. (Doc. No. 62). As of the date of this memorandum, the cross-motions for summary judgment are pending decision.

On February 5, 2014, our Court of Appeals decided Louisiana Foresty Ass'n, Inc. v. Secretary U.S. Department of Labor, 745 F.3d 653 (3d Cir. 2014). Under the APA, that case challenged the 2011 H-2B Wage Rule, 20 C.F.R. § 655.10 (2011), and presented the question

whether Defendant the Secretary of Labor has the authority to issue legislative rules in the H-2B

program, specifically the 2011 Wage Rule.[12]  See 76 Fed. Reg. 3452, 3453, 3484 (Jan. 19, 2011).

It was held that the Secretary has the authority to do so:

> We find that DOL has authority to promulgate rules concerning the temporary
> labor certification process in the context of the H-2B program, and that the 2011
> Wage Rule was validly promulgated pursuant to that authority.

La. Forestry, 745 F.3d at 669.  Our Court of Appeals held that the Secretary of Labor has limited

legislative rulemaking authority to carry out Congress's charge to the DHS to consult with and

obtain the advice of government agencies such as the DOL:

> We hold . . . that the 2011 Wage Rule was issued pursuant to the DHS' permissible
> "conditioning" of the grant of H-2B petitions on the advice of the DOL pursuant to
> the DHS's charge from Congress to "determine[ ]" H-2B visa petitions "after
> consultation with appropriate agencies of the Government."  8 U.S.C. § 1184(c)(1).
> . . . We . . . hold . . . that the 2011 Wage Rule was lawfully promulgated pursuant to
> a reasonable interpretation of a statutory provision charging the DHS with
> administration of the H-2B program.  See 8 U.S.C. § 1184.  Our decision is
> completed by the principles of deference governing our review on appeal.

Id. at 675 (alteration in original) (footnote omitted).

At this juncture, it is not possible to predict how the Eleventh Circuit might resolve the

claims presented in Bayou.  Our Court of Appeals explained in Louisiana Forestry:

---

[12]  The 2011 Wage Rule was the product of notice and comment rulemaking.  It establishes a wage calculation regime wherein the prevailing wage for an employer's job opportunity within the H-2B program is the highest of the wage calculable under a collective bargaining agreement, if there is one; the arithmetic mean wage of the Occupational Employment Statistics (OES) for each occupational category in the area of intended employment as compiled by Bureau of Labor Statistics; the Davis-Bacon Act (DBA), 40 U.S.C. § 276a et seq.; or the McNamara-O'Hara Service Contract Act (SCA), 41 U.S.C. § 351 et. seq.  See 76 Fed. Reg. 3452, 3453, 3484 (Jan. 19, 2011) (the "2011 Wage Rule").  However, these policy choices were never implemented because Congress never appropriated the necessary funds until recently.  On March 14, 2014, the DOL notified the regulated community that it "intends to publish a notice of proposed rulemaking on the proper wage methodology for the H-2B program working off the 2011 Wage Rule as a starting point."  Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, 79 Fed. Reg. 14,450 (Mar. 14, 2014).  Furthermore, "Defendants anticipate the publication of a notice of proposed rulemaking by December 31, 2014."  Defs. Resp. filed in C.A. No. 14-2657 at 8 (Doc. No. 21).

> [T]he Bayou Court's decision is not the final word from the Eleventh Circuit on the question of the DOL's general rulemaking authority.  The three-member panel in Bayou opined only on whether the District Court abused its discretion in finding that the employer-plaintiffs were likely to succeed on the merits of their challenge to the DOL's rulemaking authority, not on whether the DOL actully has that authority or not. . . .  A circuit split is thus not yet a foregone conclusion.

745 F.3d at 675 n.17 (citing Bayou, 713 F.3d at 1085); id. (quoting Pitt News v. Pappert, 379 F.3d 96, 104 (3d Cir. 2004) ("[I]t is well established that . . . a panel hearing an appeal from the entry of a final judgment [is not required] to follow the legal analysis contained in a prior panel decision addressing the question of whether a party that moved for preliminary injunctive relief showed a likelihood of success on the merits.")).

III.   DISCUSSION

Plaintiffs sue for vacatur of the 2008 H-2B rules concerning union recruitment, and the definitions of full-time work and job contractor.  There is no question that these regulations are subject to judicial review, as was previously ruled.  CATA I, 2010 WL 3431761, at *6-7.  But their invalidity is not disputed by either side.  Instead, the fundamental question here is whether the agency's decision to continue the effectiveness of the 2008 rules, and the agency's use of these rules pending resolution of its defense of the 2012 Regulation in Bayou, are subject to judicial review?  As follows, the agency's decisions and actions are subject to judicial review under the APA.  Furthermore, the agency's choices here for the administration of the H-2B program as well as its own resources are reasonable.  And those choices merit the highest deference.

The APA presumptively entitles any person "adversely affected or aggrieved by agency action" to judicial review of that action.  5 U.S.C. §§ 702, 706(2)(A); Heckler v. Chaney, 470 U.S. 821, 825-26, 828 (1985).  "Action" is defined to include the "failure to act."  5 U.S.C. § 551(13).

The presumption favoring judicial review [13] extends to final agency actions.[14]  5 U.S.C. § 704.

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971) (citing Abbott Labs. v.

Gardner, 387 U.S. 136, 140-41 (1967)); CATA I, 2010 WL 3431761, at * 6-7 (citing Davis Enter.

v. EPA, 877 F.2d 1181, 1184-85 (3d Cir. 1989)).

The APA also permits a reviewing court to "compel agency action unlawfully withheld or

unreasonably delayed."  5 U.S.C. § 706(1).  However, our Court of Appeals cautions:

> [T]his provision "does not give us license to 'compel agency action' whenever the
> agency is withholding or delaying an action we think it should take.  Instead, our
> ability to 'compel agency action' is carefully circumscribed to situations where an
> agency has ignored a specific legislative command.

Massie v. HUD, 620 F.3d 340, 347 (3d Cir. 2010) (quoting Hells Canyon Pres. Council v. U.S.

Forest Serv., 593 F.3d 923, 932 (9th Cir. 2010)).

This Court has jurisdiction to review the questions presented here.  The Supreme Court

has held that analogous requests for relief are subject to judicial review.  See, e.g., Massachusetts

---

[13]  "[E]ach authority of the Government of the United States," which includes the DOL, is subject to judicial review "except to the extent that – (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."  5 U.S.C. § 701(a).  Neither exception applies here.  No statutes preclude review.  And "[t]he second exception applies where there are 'no judicially manageable standards . . . available for judging how and when an agency should exercise its discretion.'"  CATA I, 2010 WL 3431761, at *6 (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)).  See also Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs, 343 F.3d 199, 204-06 (3d Cir. 2003) (citing Local 2855, AFGE (AFL-CIO) v. United States, 602 F.2d 574, 581 (3d Cir. 1979) (exception applies only where "on the face of the statute there is simply no law to apply in determining if [the] decision is correct") (internal quotation marks and citations omitted)).  Here, there is law to apply.  See 5 U.S.C. § 706(2)(A) (whether action is "arbirary, capricious, an abuse of discretion, or otherwise not in accordance with law").

[14]  Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  Agency action is final if it "marks the consummation of the agency's decisionmaking process," and "rights or obligations have been determined" by the action or "legal consequences will flow" from it.  Bennett v. Spear, 520 U.S. 154, 178 (1997) (internal quotation marks and citations omitted).  Accord Bethlehem Steel Corp. v. EPA, 669 F.2d 903, 908 (3d Cir. 1982) (finality "refers to the conclusion of activity by the agency").

v. EPA, 549 U.S. 497, 527 (2007) (reviewing the agency's denial of a petition for rulemaking).  In addition, the agency's decision to retain the challenged 2008 rules, and its interim use of these rules, constitute final agency action.  It is definitive and it has an immediate and direct impact on the rights and obligations of Plaintiffs' members.  See, e.g., Fox Television Stations, Inc. v. FCC, 280 F.3d 1027, 1037-38 (D.C. Cir.) (agency's refusal to institute rulemaking proceedings has "sufficient legal consequence to meet the second criterion of the finality doctrine"), op. modified on rehr'g on other grounds by, 293 F.3d 537 (D.C. Cir. 2002) (internal quotation marks and citation omitted).  Moreover, this is not a situation where the agency should be compelled to do anything – it has not ignored any specific legislative commands.

In determining whether the invalidated 2008 rules should be remanded without vacatur, Judge Pollak applied Allied–Signal, Inc. v. NRC, 988 F.2d 146, 150-51 (D.C. Cir. 1993).  "The decision whether to vacate depends on the seriousness of the [rule's] deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself  be changed."  Id. at 150-51 (internal quotation marks and citation omitted). In other words, the question whether to vacate a rule is "one of degree."  Fox Television, 280 F.3d at 1048.  "After all, vacatur is not necessarily indicated even if an agency acts arbitrarily and capriciously in promulgating a rule."  Id.  Accord CATA I, 2010 WL 3431761, at *25.

The parties disagree as to the seriousness of the deficiencies in the invalidated 2008 rules as well as the ramifications of the agency's interim use of these rules.  Plaintiffs maintain that the challenged agency action has a general, adverse effect upon the U.S. labor market.  And they say that vacatur is warranted "for precisely the same reason that this Court found continued use of the 2008 skill level wages to be unlawful in its March 21, 2013 Order."  Pls. Reply (Doc. No. 46 at

11; see id. at 3, 12, 14 (same analogy set forth)).  See also CATA III, supra (vacating the regulatory text, "at the skill level," from the 2008 H-2B Wage Rule, 20 C.F.R. § 655.10(b)(2) (2008)).

On the other hand, Defendants maintain that use of the invalidated 2008 rules is reasonable.  Vacatur, they say, would result in a regulatory gap.  Before 2008, the applicable regulatory framework was a series of guidance documents.  Judge Pollak previously ruled that the agency cannot establish substantive standards for the H-2B program using guidance documents. See CATA I, 2010 WL 3431761, at *19.  Defendants submit that the lack of effective regulations would cause more harm to the H-2B program and the U.S. labor market than use of the 2008 rules pending Bayou's resolution would cause.  Defs. Resp. (Doc. No. 40 at 14-15).

Defendants' position prevails.  The analogy between the challenged 2008 rules and the vacated methodology for determining skill-level wages breaks down on further analysis.  The determination of fair wages to be paid by employers to workers is of predominant administrative importance:  "The DOL's calculation of prevailing wages is of central importance to the H-2B program's success."  CATA III, 933 F. Supp. 2d at 704-05.  "Accordingly, labor certifications issued under the 2008 Wage Rule fall directly outside the narrow range of circumstances under which the DOL is authorized to issue labor certifications and exceed the bounds of the DOL's delegated authority under Section 706(2)(c)of the APA."  Id. at 711-12.

The 2008 rules challenged here are simply not of comparable importance in the H-2B program.  The matters regulated – that is, union recruitment, and the definitions of full-time work and job contractor – are not core, integral factors driving the overall success of the H-2B program.  Also, on this record, the magnitude and extent of any adverse consequences ensuing from interim

use of these rules appear to be relatively minor and more narrowly circumscribed.  Not every flaw in a regulation and not every less-than-desirable effect upon the U.S. labor market evidences disregard for the agency's statutory mandate.

Importantly, much of the harm said to arise from shortcomings in the regulation of job contractors also appears to have been corrected by the agency's case-by-case adjudication of H-2B labor applications.  Furthermore, after considering additional public comments and empirical data, the agency corrected the errors found in the 2008 rules by promulgating the 2012 rules.  Both sides acknowledge as much.  It is not improper that an agency's rulemaking evolves over time with fuller consideration of the relevant factors.  In sum, Plaintiffs have not shown that the agency's interim use of the invalidated 2008 rules pending Bayou's resolution is inconsistent with the agency's statutory and regulatory mandate or exceeds the bounds of Defendants' authority.

Another important reason that mandated vacatur of the 2008 rule for determining skill-level wages is not to be found on this record:

> [A]fer the DOL acknowledged the 2008 Wage Rule's defects and promulgated an unsuccessful replacement rule, the DOL entirely stopped in its tracks.  The DOL now expresses that it has no intention of taking further action to bring the DOL's H-2B labor certification into statutory and regulatory compliance . . . .

CATA III, 933 F. Supp. 2d at 713-14.  Here, Defendants promptly acted to correct shortcomings in the invalidated 2008 rules by promulgating the final 2012 Regulaton.  The agency expressly represents that it intends to implement that Regulation as soon as practicable.

Furthermore, vacatur is not supported under the second Allied–Signal factor – that is, whether vacatur would likely be unduly disruptive of the agency's regulatory program or lead to adverse consequences to the U.S. labor market?  It is not genuinely disputed that vacatur would

cause, in Defendants' view, a "disruptive regulatory hiatus."  See Defs. Resp. (Doc. No. 40 at 15, 14-15) (discussing specific adverse consequences that might be expected).  Plaintiffs acknowledge as much, contending instead that the agency should avoid those consequences by initiating expedited rulemaking to fill any regulatory gaps created by vacatur.

Plaintiffs do not offer anything that might change the analysis under Allied–Signal or warrant a different conclusion than the one made by Judge Pollak on August 30, 2010, and made again on denial of the first motion to enforce the judgment.  Allied–Signal affords a valuable "flexibility" in permissible remedies "– especially in cases where, as here, there are no previously promulgated former regulations to stand in for any vacated provisions."  CATA I, 2010 WL 3431761, at *24.  Nothing significant to the analysis here warrants a different ruling.  Remand without vacatur remains to be the appropriate remedy.

In effect, Plaintiffs' request for vacatur is tantamount to a petition for rulemaking.  It aims at compelling the agency to engage in new rulemaking to fill regulatory gaps that would be created by a grant of the requested vacatur.  This position entails the ultimate, crucial question: Whether the agency should be so compelled?  The scope of review of this question is very narrow. As the Supreme Court "has repeated time and again, an agency has broad discretion to choose how best to marshal limited resources and personnel to carry out its delegated responsibilities." Massachusetts, 549 U.S. at 527 (citing Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984)).  That discretion approaches its zenith when an agency decides not to initiate formal rulemaking.  Id. at 527-28.

Typically, such refusals arise out of denials of petitions for rulemaking, which an affected party has "an undoubted procedural right to file in the first instance."  Id.; 5 U.S.C. § 553(e).

"Refusals to promulgate rules are thus susceptible to judicial review, though such review is 'extremely limited' and 'highly deferential.'" Id. (quoting Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States, 883 F.2d 93, 96 (D.C. Cir. 1989)).  Accord New York v. NRC, 589 F.3d 551, 554 (2d Cir. 2009).   A decision to deny rulemaking "is to be overturned if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; but this standard is applied at the high end of the range of deference and an agency refusal is overturned only in the rarest and most compelling of circumstances." Id. (internal quotation marks and citation omitted).  Compelling circumstances have "involved plain errors of law, suggesting that the agency has been blind to the source of its delegated power." Am. Horse Protection Ass'n, Inc. v. Lyng, 812 F.2d 1, 5 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

This standard has been said to be so rigorous as to be "'akin to non-reviewability.'" New York, 589 F.3d at 554 (quoting Cellnet Commc'n, Inc. v. FCC, 965 F.2d 1106, 1111-12 (D.C. Cir. 1992)).  A court need only determine whether the agency's decision was "the product of reasoned decisionmaking," Motor Vehicle Mfr. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52 (1983), meaning that the agency considered the relevant factors, Lyng, 812 F.2d at 5.  Accord New York, 589 F.3d at 554.

As to the participation of job contractors in the H-2B program and the definition of a job contractor, the agency's choice to employ case-by-case adjudication of labor applications deserves deference and will not be disturbed.  See NLRB v. Bell Aerospace Co. Div. of Textron Inc., 416 U.S. 267, 293, 291-95 (1974) (quoting SEC v. Chenery Corp., 332 U.S. 194, 202-03 (1947) ("'There is . . . a very definite place for the case-by-case evolution of statutory standards.'"); Beazer East, Inc. v. EPA, 963 F.2d 603, 609-10 (3d Cir. 1992) ("agencies have some discretion to

21

chose between adjudication and rulemaking when interpreting statutes and regulations committed to their authority" and "we cannot second-guess the agency decision whether to interpret a standard by rulemaking or by adjudication"); Conference Grp. v. FCC, 720 F.3d 957,965 (D.C. Cir. 2013) ("In interpreting and administering its statutory obligations . . . [an agency] has very broad discretion to decide whether to proceed by adjudication or rulemaking.").

The instant motion to compel requests substantially the same relief as the previous unsuccessful motion to enforce the August 30, 2010 judgment – that is, an order compelling the agency to immediately put into effect final rules concerning union recruitment, and the definitions of full-time work and job contractor for the H-2B program. But Plaintiffs' dissatisifaction with the delay occasioned by Bayou's injunction of the 2012 Regulation is not a good reason to compel the agency to initate formal rulemaking. Nor have Plaintiffs provided any good reason for the agency to abandon the 2012 Regulation and embark on a new round of rulemaking in a likely unsuccessful attempt to circumvent Bayou's injunction. Once again, just as was the case with the first motion to enforce the judgment, Plaintiffs' generalized desire for expediency is insufficient to warrant judicial intrusion into the agency's timetable for rulemaking. Such an intrusion cannot be justified merely because Plaintiffs would like the agecny to act more quickly. See CATA II, 2010 WL 2934995, at *1 (citing Fed. Power Comm'n v. Idaho Power Co., 344 U.S. 17, 21 (1952) (the power "'to affirm, modify, or set aside' . . . 'in whole or in part' . . . is not power to exercise an essentially administrative function") (quoting APA, 5 U.S.C. § 706)).

In addition, the agency would incur significant costs in additional time and resources if forced to promulgate new replacement rules. It is the agency's prerogative to determine "how best to marshal limited resources and personnel to carry out its delegated responsibilities."

Massachusetts, 549 U.S. at 527.  And ultimately, the proposed remedy of new rulemaking would likely prove futile or at best misguided.  There would be no guarantee that new regulations would be beyond the reach of Bayou's injunction or immune to other litigation.  New rulemaking expenditures might prove to be duplicative or wasted.

IV.    CONCLUSION

Here, the agency's decision to continue the effectiveness of the challenged 2008 H-2B rules, and its use of these rules pending resolution of its defense of the 2012 Regulation in Bayou, are reasonable.  Although Plaintiffs would prefer a different course of action, the agency's choices must be accorded deference.  And on this record, it would be improper to compel the agency to initiate formal rulemaking to replace the invalidated 2008 regulations.  Accordingly, the instant motion to compel will be denied.

An Order accompanies this Memorandum.


BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.